UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------------------x
                                          :
WILHELM MICKELSEN,                        :
                                          :
                    Plaintiff,            :      08 Civ. 10138 (TPG)
                                          :
          – against –                     :      **OPINION**
                                          :
BERTELSMANN, INC. and OFFSET              :
PAPERBACK MANUFACTURERS., INC.,           :
                                          :
                    Defendants.           :
---------------------------------------------x
```

     In this case, Wilhelm Mickelsen, who is currently 68 years old, brings an age discrimination claim against Offset Paperback Manufacturers, Inc. ("Offset") and Bertelsmann, Inc. under the Age Discrimination in Employment Act ("ADEA") and the New York City Human Rights Law ("NYCHRL"). He asserts that Offset is a company owned by Bertelsmann, Inc. and that he began working for Offset in 1986 as a salesperson. He claims that in 2006, defendants developed a discriminatory preference for youth which culminated in a drastic reduction in his compensation and several humiliating actions, such as temporarily moving him from an office to a cubicle.

     Defendants move for summary judgment. They argue that Offset is entitled to summary judgment, because Mickelsen cannot establish a prima facie case of age discrimination, and it had a legitimate, business reason for modifying his compensation that was not a pretext for

discrimination.  They also argue that Bertelsmann, Inc. is entitled to summary judgment, because it is not Mickelsen's employer and has no liability in this action.  Mickelsen opposes this motion.

The court grants defendants' motion for summary judgment.

## FACTS

The following facts are not in dispute unless otherwise stated.

Mickelsen was born on August 13, 1943 and is currently 68 years old.  Offset, a manufacturer of mass-market paperback books located in New York City, hired Mickelsen in 1986 as a salesperson when he was 42 years old.  As a salesperson, Mickelsen's job was to secure contracts with publishing companies to produce books for distribution, and Offset compensated him on a commission basis.

Offset is a subsidiary of Bertelsmann, Inc., which is a U.S. holding company for Bertelsmann AG, a German company.

In or around 1992, Offset promoted Mickelsen to Senior Vice-President of Sales and Marketing.  In this capacity, he was responsible for managing Offset's sales group, which consisted of four employees, and he reported to Michael Gallagher, the president of Offset.  At this time, he also became a salaried employee, although he continued to work as a salesperson.

Defendants assert that because Mickelsen was not an effective manager, he was relieved of his management responsibilities in 1996. Mickelsen disputes this assertion and states that he was never told that

he was an ineffective manager.  Nevertheless, he acknowledges that he ceased serving as a sales manager in 1996.  He subsequently retained his salary and title of Senior Vice-President and focused exclusively on sales work.

In 2007, Offset was reorganized.  This reorganization had to do with Arvato Print Worldwide, which was part of the Bertelsmann family of companies, and appears to have been a subsidiary of Bertelsmann AG. Arvato was located in Germany.  As of January 1, 2007, Offset was placed under the supervision of Arvato, along with three other Bertelsmann companies that served different functions within the publishing process.  According to defendants, the purpose of this reorganization was to facilitate a better working relationship between the four companies, expand the business, and reduce costs in light of difficult economic conditions for print media.  Gallagher now reported to Markus Dohle, the president of Arvato.  In the spring of 2007, apparently in April, David Liess replaced Dohle as president of Arvato.  At this time, Liess also replaced Gallagher as Mickelsen's supervisor.  Dohle stopped being involved with Arvato in approximately July 2007.

Defendants assert that Liess made the decision to restructure the sales force of Offset and the other three Arvato businesses, so that all salespersons would be placed within one group and have standardized compensation.   In particular, Liess implemented a sales compensation plan (the "Sales Compensation Plan"), under which salespersons were

assigned the same base salary, with an opportunity to earn additional income through commissions.  Mickelsen agrees that the chief executive of Arvato initiated the Sales Compensation Plan and imposed it on Offset and the other businesses under Arvato's supervision.  Indeed, Mickelsen's main complaint in the case is about this Sales Compensation Plan.  However, Mickelsen asserts that it was Dohle, not Liess, who brought about that Plan.

The Sales Compensation Plan affected a range of employees at the companies under Arvato, not just Mickelsen.  It had a drastic and detrimental effect on Mickelsen, who made about 60% less under the Plan than he had made previously.  There is no indication that Mickelsen was treated under the plan in any discriminatory manner.

As part of Offset's corporate reorganization, Mickelsen was temporarily assigned from an office to a cubicle.  Subsequently, he was reassigned to his prior office.  Mickelsen also had a second office in Offset's Dallas, Pennsylvania location that was unaffected by Offset's reorganization.  Mickelsen claims that his temporary assignment to a cubicle in New York was humiliating.

In addition, the Sales Compensation Plan listed Mickelsen as a "Journeyman."   Defendants assert that "Journeyman" is not a title, and Mickelsen does not dispute that he has maintained his title of Senior Vice-President.  Nevertheless, Mickelsen claims that he was offended by being called a "Journeyman."

Mickelsen also asserts that he has been excluded from meetings for Vice-Presidents and Directors of Offset.  Defendants dispute this assertion, arguing that although a few staff meetings were held when Liess took over in 2007, these meetings were quickly discontinued, because there were only a few employees with the title of Vice-President or Director after the reorganization.

With regard to Mickelsen's allegations regarding age-based discrimination, he argues that around 2007, defendants expressed a desire to focus on youth.  To support this contention, Mickelsen points to statements made by employees of Bertelsmann AG.  For instance, Mickelsen cites a 2006 statement made by Gunther Thielen, who was then CEO of Bertelsmann AG, to the effect that startup internet companies are successful, because they are "full of young creative people who are absolutely determined to turn their ideas into products in the shortest time."  Similarly, Mickelsen cites a December 14, 2007 statement made by Harmut Ostrowski, Bertelsmann AG's subsequent CEO, that the company "must concentrate much more on becoming attractive for top young talent."  These were two of several statements by Bertelsmann AG executives in a similar vein.  Mickelsen also quotes from Dohle's biography on Bertelsmann AG's website, which states that he "has always cherished one hallmark of Bertelsmann's corporate culture: giving young talents great opportunities at an early stage and delegating responsibility to them . . . ."

Nevertheless, no one at Offset ever made a discriminatory comment to Mickelsen, said anything about his age, or stated that older employees should be discharged.  In addition, Offset has a written policy prohibiting discrimination on account of age.

In the summer of 2007, Mickelsen complained to Liess that the Sales Compensation Plan was "not fair."  Defendants argue that Mickelsen first raised an age discrimination claim after consulting with counsel in November 2007, although Mickelsen avers that he expressed concerns about age discrimination prior to this November complaint.  In any event, Mickelsen claims that defendants never investigated his November complaint, while defendants argue that he refused to cooperate in an internal investigation of his November complaint.  Mickelsen contends that discrimination can be inferred from the fact that 12 "older" employees left Offset after the Sales Compensation Plan took effect.  The record contains no specific information about such alleged departures.  However, it is natural to assume that they were occasioned by reductions in compensation pursuant to the Plan.  It should be noted that Mickelsen was treated better than other employees under the Plan, since his own Plan was amended to afford him a slightly higher draw due to his cash flow concerns.

Mickelsen remains employed by Offset, and he has not sought employment elsewhere.

**THE PRESENT ACTION AND THE MOTION**

Mickelsen commenced this action on November 21, 2008.  He alleges that defendants reduced his salary, moved his office, changed his title, and excluded him from business meetings, in violation of the ADEA, 28 U.S.C. § 621 and the NYCHRL, Chapter I, Title 8 of the New York City Administrative Code of the City of New York, § 8-107(1)(a).

Defendants filed a motion for summary judgment on September 22, 2010.  Defendants argue that Offset is entitled to summary judgment, because Mickelsen cannot establish a prima facie case of age discrimination, and it had a legitimate, business reason for modifying his compensation that was not a pretext for discrimination.  They also argue that Bertelsmann, Inc. is entitled to summary judgment, because it is not Mickelsen's employer and has no liability in this action.

Mickelsen opposes this motion, arguing that he has established a prima facie case against both defendants, which lack a legitimate explanation for their conduct.  In addition, Mickelsen contends that a jury should determine whether Bertelsmann, Inc. is his employer.

**DISCUSSION**

Summary judgment may be granted if there is no genuine issue as to any material fact, such that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  In assessing a summary judgment motion, the court must draw all justifiable inferences in favor of the non-movant.  Id. at 255.

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the non-moving party has the burden of proof on a specific issue, however, the movant may satisfy its initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's case.  Id. at 322-23, 325.

Courts are directed to exercise "an extra measure of caution" before granting summary judgment in a discrimination case, "because direct evidence of discriminatory intent is rare and such intent must often be inferred from circumstantial evidence . . . ."  Holtz v. Rockefeller & Co., 258 F.3d 62, 69 (2d Cir. 2001).  The Second Circuit has explained that, "[i]n discrimination cases where state of mind is at issue, we affirm a grant of summary judgment in favor of an employer sparingly because 'careful scrutiny of the factual allegations may reveal circumstantial evidence to support the required inference of discrimination.'"  Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003).

Mickelsen's Employer

      While the parties do not dispute that Offset was Mickelsen's immediate employer, they do not agree on whether Bertelsmann, Inc. was also Mickelsen's employer by virtue of its corporate relationship with Offset.  To determine whether two nominally separate entities are actually part of a single integrated enterprise, and thus, whether they may be held jointly liable for any unlawful discrimination, courts consider four factors.  Dewey v. PTT Telecom Netherlands, U.S., Inc., No. 94 Civ. 5983, 1995 WL 425005, at *2 (S.D.N.Y. July 19, 1995).  In particular, courts assess the degree of (1) centralized control of labor relations, (2) interrelated operations, (3) common management, and (4) common ownership.  Id.  Nevertheless, "[c]ourts do not readily find that related entities are single employers in discrimination cases."  Id.

      The most important factor in this analysis is the degree of centralized control of labor relations and whether it exceeds "the control normally exercised by a parent corporation which is separate and distinct from the subsidiary."  Id.  Here, Mickelsen fails to demonstrate that Bertelsmann, Inc. exercised any such control over Offset's labor practices.  While Mickelsen presents evidence demonstrating that Offset is wholly owned by Bertelsmann AG and states in his affidavit that he used Bertelsmann's name when making sales, he presents no evidence that Bertelsmann, Inc. employees were involved in employment decisions related to Offset.

It appears to be uncontested that the Sales Compensation Plan emanated from Arvato Print Worldwide as described earlier.  Beginning in January 1, 2007, Offset was placed under the supervision of Arvato.  There is a dispute as to who in Arvato was responsible.  Mickelsen asserts that it was Dohle, who was president of Arvato until sometime in the spring of 2007.  Defendants assert that it was Liess, who became president of Arvato in the spring of 2007.  But, in any event, the Sales Compensation Plan came from Arvato and affected employees at Offset, including Mickelsen.  Mickelsen alleges that Dohle, when he was president of Arvato, not only took the steps resulting in Mickelsen's salary cut but perpetrated the other alleged humiliating and discriminatory acts.

Arvato is not named as a defendant.  Defendants are not moving to dismiss on the ground that Arvato should have been named as a defendant and that the wrong defendant or defendants were actually named.  It appears to be conceded, at least for purposes of this motion, that Offset could be liable for any wrongdoing imposed on it by Arvato.

However, the issue remains as to whether Arvato's involvement is sufficient to justify naming Bertelsmann, Inc. as a defendant.  The court finds that there is no evidence to show that Arvato and Bertelsmann, Inc. were a single integrated business, or that Bertelsmann, Inc. exercised control over Offset through Arvato.

For these reasons, Mickelsen fails to demonstrate that Offset and Bertelsmann, Inc. are a single integrated business.  Consequently, Mickelsen has not raised a genuine issue of fact as to whether Bertelsmann, Inc. should be considered his employer.  The court will grant summary judgment dismissing the case as to Bertelsmann, Inc.

Mickelsen's Prima Facie Case

To analyze Mickelsen's age discrimination claim against Offset under the ADEA, the court must apply the burden-shifting framework set forth by the Supreme Court.  Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 105-06 (2d Cir. 2010).  Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973).  If the plaintiff does so, the burden shifts to the defendant to articulate "some legitimate, nondiscriminatory reason" for its action.  Id.  Once such a reason is provided, the plaintiff must demonstrate that the proffered reason was a mere pretext for unlawful discrimination.  Id.  The Supreme Court has recently clarified that on this last prong, the plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action" and not just a contributing or motivating factor.  Gross v. FBL Fin. Serv's. Inc., 129 S.Ct. 2343, 2352 (2009).  The same burden-shifting framework applies to a NYCHRL claim of age discrimination, which may be analyzed in tandem

with an ADEA claim.  Leibowitz v. Cornell University, 584 F.3d 487, 498 n.1 (2d Cir. 2009).

The Second Circuit has characterized the burden of establishing a prima facie ADEA case as "minimal" and "de minimis."  Berube v. Great Atl. & Pac. Tea Co., Inc., 348 Fed. Appx. 684, 686 (2d Cir. 2009).  To establish a prima facie case of age discrimination, a plaintiff must show (1) that he was within the protected age group, (2) that he was qualified for the position, (3) that he experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination.  Gorzynski, 596 F.3d at 107.

The ADEA protects individuals who are at least 40 years old.  See 29 U.S.C. § 631(a).  Mickelsen was 63 years old in the summer of 2007 and turned 64 on August 13 of that year.  Mickelsen has 25 years of experience in sales work at Offset and was qualified for his position.

An employment action is materially adverse if it is "more disruptive than a mere inconvenience or an alteration of job responsibilities," and it may include "a demotion evidenced by a decrease in wage or salary."  Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir. 2000).  Here, Mickelsen suffered an adverse employment action when Offset reduced his compensation by about 60%.  However, he did not experience materially adverse actions with respect to his office, because he was only temporarily moved to a cubicle; with respect to his title, because it was never changed from Senior Vice-President; or with respect

to not being included in meetings, because they were almost entirely discontinued shortly after Liess took over as president of Arvato Print Worldwide.  See Yadav v. Brookhaven Nat'l Lab., 204 F. Supp. 2d 509, 521 (E.D.N.Y. 2002) (temporary cubicle); Szarzynski v. Roche Labs., Inc., 07 Civ. 6008, 2010 WL 811445, at *7 (W.D.N.Y. Mar. 1, 2010) (job title); Newmark v. Lawrence Hosp. Ctr, No. 07 Civ. 2861, 2008 WL 5054731, at *6 (S.D.N.Y. Oct. 20, 2008) (exclusion from meetings).

Finally, a plaintiff must offer admissible evidence showing circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive.  Elfenbein v. Bronx Lebanon Hosp. Ctr, No. 08 Civ. 5382, 2009 WL 3459215, at *5 (S.D.N.Y. Oct. 27, 2009). Although the inquiry on this element is flexible and fact-specific, a plaintiff may demonstrate this discriminatory motive by pointing to remarks made by decision makers which reflect a discriminatory animus. Wayne v. Principi, No. 01 Civ.941, 2004 WL 389009, at *10 (S.D.N.Y. Mar. 3, 2004).

This fourth element is, of course, essential to Mickelsen's making out a prima facie case.  As described, Mickelsen suffered an adverse employment action when his compensation was reduced by about 60%. Was there a discriminatory motive?  The answer would clearly seem to be in the negative since the Sales Compensation Plan applied to all salespersons regardless of age.  Mickelsen's only response is that an inference of discrimination should be drawn because of the statements

about the value of young talent referred to earlier in this opinion, made by Bertelsmann AG executives.  There was also the statement attributed to Dohle about giving young talents opportunities and responsibility.

It should be clear that a company and its managers can have such views and express them, because it is reasonable to consider that there is a value in youth and its possible special creative talents.  However, this does not in any way necessarily imply that there is not also a value in persons of maturity and long experience.  Of course, statements about the value of youth <u>can</u>, in an appropriate case, be evidence of discrimination against older employees, but there must be some modicum of evidence that there is in fact such discrimination.  In the present case, there simply is no such modicum of discrimination.  There is absolutely no evidence that the Sales Compensation Plan was motivated in any degree by a desire to disadvantage older employees.  There is no evidence at all that any of the pro-youth comments or views were connected in any way with the adoption of the Sales Compensation Plan.  The court finds that Mickelsen has not made out a prima facie case of age discrimination against either defendant.

Offset's Legitimate Explanation

Even assuming that Mickelsen has presented a prima facie case, Offset has offered a legitimate explanation for introducing the Sales Compensation Plan and applying it to all salespersons, including Mickelsen, who focused exclusively on sales work.  Specifically, Offset

states that it sought to tie employees' compensation to business generation by implementing standardized, commission-based compensation.  Offset supports this assertion with uncontradicted testimony from Liess and Dohle.  Further, it cites Mickelsen's deposition testimony, wherein he acknowledges that "these are very difficult times in publishing."  In light of this non-discriminatory, business rationale for its Sales Compensation Plan, Offset has proffered a legitimate reason for its employment decisions affecting Mickelsen.  See e.g., Beebe v. New York Times Co., 666 F. Supp. 2d 321, 337 (E.D.N.Y. 2009).

Pretext

Mickelsen has made no showing whatever that the non-discriminatory reason for the Sales Compensation Plan was a pretext. Also, he surely has provided no basis for any conclusion that his age was the "but for" cause of the Plan.

**CONCLUSION**

The court grants defendants' motion for summary judgment,

dismissing Mickelsen's complaint.

This opinion resolves document number 10 listed on the docket.

SO ORDERED.

Dated:  New York, New York
        September 19, 2011

Thomas P. Griesa
U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/19/11

- 16 -